UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA HORSLEY, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>KAISER FOUNDATION HOSPITALS, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-05628-AMO<br><br>**ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS, GRANTING KAISER DEFENDANTS' MOTION TO DISMISS, AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 36, 37, 45 |

This case arises from Defendants' COVID-19 vaccine mandates for healthcare workers. Before this Court are two motions to dismiss and Plaintiffs' motion for leave to file a third amended complaint. The Plaintiffs, former healthcare workers at Kaiser Foundation Hospitals ("Kaiser"), contend that Defendants violated their constitutional and international treaty rights, violated their federal statutory rights, committed various state torts, and breached a contract by requiring Plaintiffs to receive an investigational vaccine or lose their jobs. The matter is fully briefed and suitable for decision without oral argument. *See* Civil L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** the motions to dismiss and **DENIES** the motion for leave to amend for the following reasons.

**I.  BACKGROUND**[1]

Plaintiffs are former employees of Kaiser who were terminated after refusing to receive a

---

[1] The court accepts factual allegations in the complaint as true, *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 722 (9th Cir. 2024), and "construe[s] the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1  COVID-19 vaccine.  Second Amended Complaint (ECF 33) ("SAC") ¶¶ 18, 329.  On January 31,
2  2020, the Secretary of Health and Human Services declared a public health emergency related to
3  COVID-19.  SAC ¶¶ 1-2.  On December 11, 2020, the U.S. Food and Drug Administration (FDA)
4  issued an Emergency Use Authorization for the distribution of "investigational" COVID-19
5  vaccines.  SAC ¶¶ 75-77.
6        On August 5, 2021, the California Department of Public Health issued a public health
7  order requiring that "all workers who provide services or work in [healthcare facilities] . . . have
8  their first dose of a one-dose regimen or their second dose of a two-dose regimen [of the COVID-
9  19 vaccine] by September 30, 2021."  SAC ¶ 218; *id.*, Ex D (ECF 33-4) ("Health Order") at 2.
10  The Health Order specified that workers may be exempt from the vaccination requirements of the
11  Health Order "only upon providing the operator of the facility a declination form, signed by the
12  individual stating either of the following: (1) the worker is declining vaccination based on
13  Religious Beliefs, or (2) the worker is excused from receiving any COVID-19 vaccine due to
14  Qualifying Medical Reasons."  Health Order at 3.  The Health Order "mandated the use of
15  investigational new drugs by healthcare workers."  SAC ¶ 6.
16        On August 27, 2021, the Kaiser Defendants implemented a policy requiring all employees
17  to be fully vaccinated against COVID-19 by September 30, 2021, or to submit proof of a
18  qualifying medical or religious exemption.  SAC ¶¶ 308-09.  The policy stated that employees
19  who were not fully vaccinated or who did not have an approved exemption would be terminated
20  by December 1, 2021.  SAC ¶ 309.  Plaintiffs refused to be vaccinated and Kaiser terminated them
21  as a result.  SAC ¶¶ 171, 329.  Plaintiffs do not assert that they sought an exemption, that Kaiser
22  administered a COVID-19 vaccine to any of the Plaintiffs, or that Kaiser required its employees to
23  get a COVID-19 vaccine from Kaiser.
24        Plaintiffs allege nine causes of action in the Second Amended Complaint: (1) Section
25  1983 – subjected to investigational drug use; (2) Section 1983 – deprivation of Equal Protection;
26  (3) Section 1983 – deprivation of Constitutional Due Process; (4) Section 1983 – deprivation of
27  rights under the Spending Clause; (5) Section 1983 – Unconstitutional Conditions Doctrine;
28  (6) Section 1983 – PREP Act; (7) breach of contract, third party beneficiary; (8) intentional

1  infliction of emotional distress; and (9) implied private right of action under 21 U.S.C. § 360bbb-
2  3. Defendants Gavin Newsom, Governor of California, and Tomás Aragón, Director of the
3  California Department of Public Health (collectively, "State Defendants") move to dismiss each
4  cause of action alleged against them. ECF 36. Defendants Greg Adams, Andrew Bindman, and
5  Kaiser Foundation Hospitals (collectively, "Kaiser Defendants") also move to dismiss each cause
6  of action. ECF 37. The Court addresses each motion in turn.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires dismissal when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. When evaluating a motion to dismiss, the court accepts plaintiffs' factual allegations in the complaint as true, *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 722 (9th Cir. 2024), and "construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. However, "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations omitted).

## III. STATE DEFENDANTS' MOTION TO DISMISS

The State Defendants move to dismiss the SAC, arguing that (1) Plaintiffs lack Article III standing; (2) Plaintiffs' official capacity claims against State Defendants are barred by sovereign immunity; (3) Plaintiffs' individual capacity claims against State Defendants fail to allege any personal involvement in the violation of their rights; (4) State Defendants are entitled to qualified

3

1   immunity from federal claims alleged against them in their individual capacities; and (5) Plaintiffs
2   fail to state a claim under Rule 12(b)(6). ECF 36 ("State Mot."). The Court addresses standing
3   first as it is a threshold question. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 879
4   (9th Cir. 2022) (citation omitted).

### A.     Article III Standing[2]

State Defendants move to dismiss the claims against them for lack of Article III standing. State Mot. at 18-19. The Court evaluates challenges to Article III standing under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. *Maya*, 658 F.3d at 1067. Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). These three elements are referred to, respectively, as: injury in fact, causation, and redressability. *See Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).

State Defendants challenge causation, arguing that Plaintiffs' termination from Kaiser for their refusal to receive the COVID-19 vaccine is not "fairly traceable" to any action by the State Defendants. State Mot. at 18. Causation requires that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). While plaintiffs need not show proximate cause, they "must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya*, 658 F.3d at 1070. A chain of causation does not fail "simply because it has several 'links,' provided those links are 'not hypothetical or tenuous.'" *Id.* (quoting *Nat'l Audobon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir.), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002)). "[W]hen a plaintiff alleges that government action caused injury by influencing the

---

[2] In ruling on a motion to dismiss for lack of standing, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citation omitted).

4

1 conduct of third parties, [the Ninth Circuit has] held that 'more particular facts are needed to show
2 standing" because a third party "may well have engaged in their injury-inflicting actions even in
3 the absence of the government's challenged conduct." *Mendia v. Garcia*, 768 F.3d 1009, 1012
4 (9th Cir. 2014) (quoting *Nat'l Audubon Soc'y*, 307 F.3d at 849). To plausibly allege that the
5 injury was "not the result of the independent action of some third party," the plaintiff must allege
6 that the government conduct is "at least a substantial factor motivating the third parties' actions."
7 *Id.* (citations omitted).

Plaintiffs allege injury from (1) being forced to receive the COVID-19 vaccination without their informed consent and (2) being terminated from their employment for failing to receive the COVID-19 vaccine. *See generally* SAC. Because Plaintiffs do not allege that they received the COVID-19 vaccine, and instead allege that they exercised their right to not be vaccinated, SAC ¶¶ 171, 329, their first theory of injury does not allege an injury which is fairly traceable to the State Defendants. *See Spokeo*, 578 U.S. at 338.

As regards Plaintiffs' termination from their employment, State Defendants argue that Plaintiffs' terminations resulted from the Kaiser Defendants' actions, and that State Defendants did not mandate or cause such termination, whether pursuant to their own or Kaiser's vaccination requirement. State Mot. at 19. Plaintiffs respond that the harm is traceable to State Defendants because State Defendants "issued a mandate [] requiring Kaiser to ensure all workers were vaccinated according to the public health order under the force of law, which was official state policy and required adherence by Kaiser." Opp. (ECF 40) at 18 (citing SAC ¶ 218). On August 5, 2021, the State issued a Health Order requiring all healthcare workers be fully vaccinated against COVID-19 (subject to medical and religious exemptions) by September 30, 2021. SAC ¶ 218, Ex D. On August 27, 2021, Kaiser issued a policy requiring all employees (subject to exemptions) to receive COVID-19 vaccinations by September 30, 2021 or face termination. SAC ¶ 308. The Kaiser Policy notes that there is a "vaccination requirement[] under [the] state mandate." SAC, Ex. F at 1. Given the timing of the two policies and the Kaiser policy's mention of the state mandate, it is plausible that the State's vaccine mandate led Kaiser to implement its own vaccine policy. *See Nat'l Audubon Soc'y*, 307 F.3d at 849 (plausible chain of causation against state

1 officials and agencies where federal government removed wildlife traps in direct response to California Proposition 4). Plaintiffs sufficiently allege standing at this stage. Accordingly, the Court denies the motion to dismiss on this basis.

### B. Qualified Immunity

State Defendants also move to dismiss the Section 1983 claims against them on the basis that they are entitled to qualified immunity. State Mot. at 21-24. Plaintiffs assert that State Defendants cannot invoke qualified immunity because (1) their conduct involved ministerial as opposed to discretionary functions, and (2) State Defendants failed to show that their conduct conformed with clearly established law. Opp. at 20-22. The Court considers each argument in turn.

#### 1. Ministerial Versus Discretionary Conduct

Plaintiffs assert that State Defendants cannot invoke qualified immunity because they were under a duty to perform the ministerial function of "accepting the Plaintiff's chosen option under the EUA [Emergency Use Authorization] statute and the CDC Program and to ensure the recruited healthcare facilities performed the same function." Opp. at 21.

"Qualified immunity shields only actions taken pursuant to discretionary," not ministerial functions. *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989); *see Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). A law is ministerial only if it specifies the "precise action that the official must take in each instance . . . [.]" *F.E. Trotter*, 869 F.3d at 1315 (quoting *Davis v. Scherer*, 468 U.S. 183, 196, n.14 (1984)). "[I]f an official is required to exercise his judgment, even if rarely or to a small degree, the Court would apparently not find the official's duty to be ministerial in nature." *Id.* at 1314 (quoting *Gagne v. City of Galveston,* 805 F.2d 558, 560 (5th Cir. 1986)).

Plaintiffs offer only conclusory allegations that State Defendants had a "ministerial duty to obtain Plaintiffs' legally effective informed consent." ECF 68 at 4. In support, they reference a CDC Playbook that provides guidance on vaccination responses, a statute requiring informed consent before involving a human subject in research (45 CFR § 46.116), and a statute authorizing medical products for use in emergencies (21 U.S.C. §360bbb-3). *See* Opp. at 15-16; ECF 68 at 5-

6

1   7. Plaintiffs do not identify any language in these statutes or the handbook requiring State
2   Defendants to accept Plaintiffs' refusal to receive EUA vaccines or ensure that health facilities did
3   the same in instituting the Health Order. *Cf. Rieman v. Vazquez*, 96 F.4th 1085, 1091-92 (9th Cir.
4   2024) (no qualified immunity where social workers were mandated under the law to provide
5   notice of a hearing and failed to provide such notice). Plaintiffs thus fail to establish that the State
6   Defendants had a ministerial duty under Plaintiffs' alleged facts.

### 2. Clearly Established Right

State Defendants assert that the rights at issue were not clearly established at the time of their conduct. State Mot. at 22-24. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). To determine if government officials can avail themselves of qualified immunity, the Court must determine whether: (1) the facts alleged state a violation of a statutory or constitutional right; and (2) the right was clearly established when viewed in the specific context of the case. *Id.* at 232. "[C]ourts may determine which prong of qualified immunity they should analyze first." *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019) (citing *Pearson*, 555 U.S. at 236).

The Court first considers whether the right was clearly established, as doing so is particularly appropriate where a court can "quickly and easily decide that there was no violation of clearly established law." *Jessop*, 936 F.3d at 940 (quoting *Pearson*, 555 U.S. at 239). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (citations and quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation omitted).

Plaintiffs argue that State Defendants "offer no case law establishing" the right to require a healthcare worker "to be injected with an EUA drug." Opp. at 22. Plaintiffs miss the mark – it is "plaintiff[s] who bear[ ] the burden of showing that the rights allegedly violated were clearly established." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (citations

7

1  and internal quotation marks omitted).  Plaintiffs offer the Court no authority showing that State
2  Defendants violated a "clearly established" right by issuing the Health Order requiring COVID-19
3  vaccinations for healthcare workers.  *See Pearson*, 555 U.S. at 231.
4        Similarly, Plaintiffs do not provide any law existing at the time of State Defendants'
5  Health Order that put "beyond debate" that requiring healthcare worker vaccination during a
6  pandemic would violate a clearly established right.  *See Rivas-Villegas*, 595 U.S. at 5 (citation
7  omitted).  Indeed, "[a]t best, the validity of these vaccine mandates under the principles discussed
8  in *Jacobson* . . . and related cases is debatable . . . [.]" *Johnson v. Kotek*, No. 22-35624, 2024 WL
9  747022, at *3 (9th Cir. Feb. 23, 2024); *see Biden v. Missouri*, 595 U.S. 87, 93 (2022) (holding that
10 "[v]accination requirements are a common feature of the provision of healthcare in America:
11 Healthcare workers around the country are ordinarily required to be vaccinated for diseases . . .");
12 *see also Miller v. City of Scottsdale*, 88 F.4th 800, 806 (9th Cir. 2023) (pointing to a long history
13 of caselaw showing that "[d]uring pandemics like COVID-19, the legislative and executive
14 branches have broad powers and discretion to carry out the recommendations of health officials
15 designed to protect '[t]he safety and the health of the people.'") (citations omitted).
16       Because Plaintiffs have failed to meet their burden of showing a clearly established right,
17 the Court finds that Director Aragón and Governor Newsom are entitled to qualified immunity on
18 the federal claims.  Accordingly, the Court **DISMISSES** the federal claims against the State
19 Defendants.[3]

      **C.**    **State Law Claims**

21       State Defendants also move to dismiss Plaintiffs' state law claims for breach of contract
22 and intentional infliction of emotional distress, arguing that Plaintiffs (1) fail to allege that they
23 first presented the claims to the State under the California Government Claims Act (CGA); (2) the
24 CGA confers immunity for State Defendants' actions; and (3) Plaintiffs fail to allege facts
25 sufficient to state cognizable claims.  State Mot. at 33.  Plaintiffs fail to oppose these arguments,

---

[3] Because the qualified immunity analysis is dispositive, the Court does not reach State Defendants' alternative arguments for dismissing the SAC.

8

1    and thus concede them.  *See Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir.

2    2006) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response

3    to a defendant's motion to dismiss . . . has effectively abandoned his claim"); *Namisnak v. Uber*

4    *Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020) ("Plaintiff fails to respond to this

5    argument and therefore concedes it through silence.") (quoting *Ardente, Inc. v. Shanley*, No. 07-

6    cv-04479, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010)).  Further, in their reply, State

7    Defendants noted that they considered Plaintiffs' failure to oppose these arguments to amount to a

8    waiver of their state law claims, and Plaintiffs have not moved for leave to clarify that they did not

9    intend to abandon these claims.  *See Namisnak*, 444 F. Supp. 3d at 1145-46.  Accordingly, the

10   Court **DISMISSES** the state law claims against the State Defendants with prejudice.  *See*

11   *Ramachandran v. Best Best & Krieger*, No. 20-CV-03693-BLF, 2021 WL 428654, at *9 (N.D.

12   Cal. Feb. 8, 2021).

### IV. KAISER DEFENDANTS' MOTION TO DISMISS

14   The Kaiser Defendants move to dismiss the SAC, arguing that (1) the Section 1983 causes

15   of action (claims 1-6) fail because Plaintiffs do not allege that the Kaiser Defendants are state

16   actors; (2) Plaintiffs fail to state a Section 1983 claim; (3) the ninth cause of action fails because

17   there is no private right of action under 21 U.S.C. § 360bbb-3; and (4) Plaintiffs fail to state a

18   claim for their state law claims for breach of contract (claim 7) and intentional infliction of

19   emotional distress (claim 8).  ECF 37 ("KFH Mot.").  The Court addresses each in turn.

#### A. Section 1983 Claims

21   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a

22   right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

23   violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S.

24   42, 48 (1988).  "The state-action element in § 1983 'excludes from its reach merely private

25   conduct, no matter how discriminatory or wrongful.'"  *Caviness v. Horizon Cmty. Learning Ctr.,*

26   *Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40

27   (1999)).

28   The Kaiser Defendants contend that Plaintiffs' federal claims, asserted pursuant to Section

1983, fail to allege that the Kaiser Defendants acted "under color of state law" as state actors. KFH Mot. at 14. As a threshold issue in determining whether the Kaiser Defendants were state actors, the Court "must identify the specific conduct" of which Plaintiffs complain. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (citations and quotation marks omitted). Plaintiffs contend that they were injured because of Kaiser's actions as an employer – specifically, that the Kaiser Defendants implemented an unlawful policy that Plaintiffs receive a COVID-19 vaccination before September 30, 2021, subject to medical and religious exemptions, or face termination. SAC ¶¶ 308-10. Thus, the relevant inquiry here is whether enacting such a policy and terminating Plaintiffs from employment constituted state action.[4]

The Ninth Circuit recognizes four tests for determining whether a private party is a state actor and thus acting "under color of state law" under Section 1983: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson*, 975 F.3d at 747 (citation omitted). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id.* (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). However, "compliance with generally applicable laws" cannot convert private conduct into state action under any of these tests. *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1013 (9th Cir. 2020) (citing cases).

Plaintiffs only advance the public function and joint action tests in their Opposition. ECF 41 at 16-21. Accordingly, they have conceded theories of government compulsion and nexus. *See Walsh*, 471 F.3d at 1037; *Namisnak*, 444 F. Supp. 3d at 1146. The Court therefore addresses only whether Plaintiffs have alleged that the Kaiser Defendants were performing a public action or acting jointly with the State.

---

[4] In the SAC and opposition to the motion to dismiss, Plaintiffs discuss Kaiser's obligations as an entity that provides COVID-19 vaccines. SAC ¶¶ 86-90, 183-85, 371-78; ECF 41 at 17-19. However, Plaintiffs do not allege that they were forced to receive a COVID-19 vaccine from Kaiser. Thus, Kaiser's actions as an entity that provides COVID-19 vaccines are irrelevant to whether it was a state actor for the Section 1983 claims alleged here. *See Curtis v. PeaceHealth*, No. 3:23-CV-05741-RJB, 2024 WL 248719, at *5 (W.D. Wash. Jan. 23, 2024).

### 1. Public Function Test

The Kaiser Defendants argue that their enforcement of a vaccination policy is not a public function. KFH Mot. at 24. "The public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.'" *Rawson*, 975 F.3d at 748 (citations omitted). The test is "difficult to meet," and there is a "lean list of [] 'very few' recognized public functions, including 'running elections,' 'operating a company town,' and not much else." *Prager Univ. v. Google LLC*, 951 F.3d 991, 997-98 (9th Cir. 2020) (citations omitted). Plaintiffs contend, without support, that "[t]he CDC Program was a Public Function because only the federal government can declare a federal emergency, authorize emergency use of unlicensed drugs, and create a federal program to administer those drugs through State governments as a public function." ECF 41 at 20. Even assuming that these actions under the CDC Program constitute a "public function," Plaintiffs do not allege that the Kaiser Defendants declared a federal emergency, authorized emergency use of drugs, or created a federal program to administer the drugs. Plaintiffs further argue that the Kaiser Defendants assumed a public function by acting in accordance with "official state policy." ECF 41 at 16-17. Not so. A private party's compliance with state law does not make them a state actor. *See Heineke*, 965 F.3d at 1013; *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 839 (9th Cir. 1999) (recognizing that Supreme Court precedent does not hold "that governmental compulsion in the form of a general statute, without more, is sufficient to transform every private entity that follows the statute into a governmental actor."). Accordingly, Plaintiffs have not shown that the Kaiser Defendants were engaged in a public function.

### 2. Joint Action

Plaintiffs also argue that the Kaiser Defendants were engaged in joint action or a "symbiotic relationship" with California because Kaiser and California were "required by the federal government to conduct medical research and obtain Plaintiffs' legally effective informed consent." SAC ¶ 307 n.111; ECF 41 at 17. The joint action test is satisfied where there is a "sufficiently close nexus between the state and the private actor" such that the actions of the private actor "may be fairly treated as that of the State itself" or where the State has "so far

11

insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Rawson*, 975 F.3d at 748 (quoting *Jensen v. Lane Cnty.*, 222 F.3d 570, 575-78 (9th Cir. 2000) (citations omitted)). The test is "intentionally demanding and requires a high degree of cooperation between private parties and state officials to rise to the level of state action." *O'Handley v. Weber*, 62 F.4th 1145, 1159-60 (9th Cir. 2023), *cert. denied*, 2024 WL 3259696 (July 2, 2024). Here, Plaintiffs merely allege that the Kaiser Defendants and the State of California were both obligated to follow federal law. That is insufficient to meet the "demanding standard" of joint action. *See O'Handley*, 62 F.4th at 1160; *see also Heineke*, 965 F.3d at 1013 (complying with generally applicable laws is insufficient to convert private conduct into state action). Therefore, the Court cannot find that the Kaiser Defendants engaged in joint action with the State simply by following generally applicable law and issuing a vaccination policy.

Because the Court concludes that the Kaiser Defendants were not state actors, the Court **DISMISSES** the Section 1983 claims against them.[5]

### B. Implied Right of Action Under 21 U.S.C. § 360bbb-3

Plaintiffs assert a claim for "Implied Private Right of Action 21 U.S.C. § 360bbb-3." SAC ¶¶ 415-17. This provision of the Food, Drug, and Cosmetic Act (FDCA) authorizes medical products for use in emergencies. 21 U.S.C. § 360bbb-3. Section 310 of the FDCA expressly states that all proceedings to enforce the FDCA "shall be by and in the name of the United States." 21 U.S.C. § 337(a); *see Johnson*, 2024 WL 747022, at *2. The Supreme Court has clarified that "[p]rivate parties may not bring enforcement suits [under the FDCA]" and that the United States has "nearly exclusive enforcement authority" under the FDCA. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (holding that "[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance . . ."). Plaintiffs' only response to this significant authority precluding private enforcement of the FDCA is that the

---

[5] As the state action element is dispositive, the Court does not address Kaiser Defendants' additional arguments for dismissing the Section 1983 claims.

12

1  "EUA statute contains the same language, circumstances, and conditions courts used to imply a
2  private right of action under Title VI and IX. Therefore, courts should apply an implied private
3  right of action under this statute." ECF 41 at 25. Plaintiffs offer no legal authority to support this
4  assertion, and it contradicts Supreme Court and statutory authority holding that there is no private
5  right of action under the FDCA. The Court therefore **DISMISSES** this claim as a matter of law.
6  *See POM Wonderful*, 573 U.S. at 109; *Buckman*, 531 U.S. at 349 n.4.

### C. State Law Claims

Because the Court has dismissed all federal claims against the Kaiser Defendants, the Court declines supplemental jurisdiction over the state law claims. Under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction" where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Typically, "[w]hen federal claims are dismissed before trial . . . pendent state claims should also be dismissed." *Religious Tech. Ctr v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (citation omitted). The Court thus declines to exercise supplemental jurisdiction over the remaining state law claims. *See Vasquez v. City of San Jose*, 634 F. Supp. 3d 712, 733 (N.D. Cal. 2022), *aff'd*, No. 22-16691, 2024 WL 445320 (9th Cir. Feb. 6, 2024); *see also City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that the district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims). Accordingly, the Court **DISMISSES** Plaintiffs' state law claims without prejudice.

### V. LEAVE TO FILE A THIRD AMENDED COMPLAINT

While the instant motions to dismiss were pending, Plaintiffs filed a motion for leave to file a Third Amended Complaint ("TAC"), seeking to add a tenth cause of action for deprivation of the "fundamental right to refuse unwanted medical treatment." ECF 45. The Court considers the TAC in assessing whether to grant Plaintiffs leave to amend after concluding that the State Defendants' and Kaiser Defendants' motions to dismiss should be granted.

Leave to amend "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010). However, the "general rule" allowing

amendment of pleadings "does not extend to cases in which any amendment would be an exercise in futility, [] or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted). In determining whether to grant leave to amend, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Here, because there is no evidence of delay, prejudice, bad faith, or previous amendments to the complaint,[6] leave to amend turns on whether amendment is futile.

Plaintiffs' proposed amendments allege that the COVID-19 injections were not a vaccine, but instead were "medical treatment" because they do not effectively "prevent the spread" of the virus. ECF 45 at 2.

Plaintiffs argue that amendment is not futile as to the Section 1983 claims against the State Defendants because there is a clearly established right to refuse investigational drugs. ECF 68 at 7. However, in support of this contention, Plaintiffs cite dicta in a 2004 district court case from the District of Columbia. *Id.* (citing *Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004)).[7] While there need not be a case "directly on point," a government official violates clearly established law only when "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "[A] district judge's *ipse dixit* of a holding is not 'controlling authority' in any jurisdiction," *id.*, thus a district court case from the District of Columbia cannot clearly establish law in California. Moreover, *Doe* is not the panacea that Plaintiffs posit as it did not hold that requiring healthcare workers to receive investigational drugs during a health emergency is against the law. *See Doe*, 341 F. Supp. 2d at 15-16 (finding an Administrative Procedure Act violation for the FDA's failure to follow correct procedures for

---

[6] The parties stipulated to previous amendments to the complaint.

[7] In arguing for leave to amend, Plaintiffs also contend that they were previously unaware of the facts in the "groundbreaking decision in COVID-19 litigation that a plaintiff may plausibly allege a cause of action based on the facts alleged in *Health Freedom*." ECF 45 at 2-3. Thus, the 2024 decision in *Health Freedom* cannot support Plaintiffs' theory that existing caselaw at the time of the State Defendants' conduct showed that they were violating clearly established law. *See Rivas-Villegas*, 595 U.S. at 5.

14

certifying that an anthrax vaccine was safe and effective for its intended use). Although Plaintiffs offer a new theory that the COVID-19 injections were "medical treatment" rather than vaccinations, the right they assert was not clearly established at the time the State Defendants acted. They also fail to allege that the State Defendants knew that the COVID-19 vaccinations were "unwanted medical treatment" as opposed to vaccinations. Therefore, a reasonable official could have understood that requiring healthcare workers to receive what they believed to be a vaccine during a health emergency was compatible with existing law. *See Rivas-Villegas*, 595 U.S. at 5.

As Plaintiffs' proposed amendments do not allege that State Defendants violated a clearly established right, amendment would prove futile. Accordingly, the Court **DENIES** Plaintiffs' motion for leave to amend the claims against the State Defendants.

Nothing in the motion for leave to file a TAC or the allegations Plaintiffs seek to add shows that the Kaiser Defendants were state actors. Accordingly, amendment would be futile as to the Section 1983 claims alleged against the Kaiser Defendants, and the Court **DENIES** Plaintiffs' motion for leave to amend the claims against the Kaiser Defendants.

## VI. CONCLUSION

For the foregoing reasons, the Court **DISMISSES** the Section 1983 claims with prejudice. The Court **DISMISSES** the state law claims against the State Defendants with prejudice. The Court **DISMISSES** the state law claims against the Kaiser Defendants without prejudice towards Plaintiffs re-filing them in state court.

Defendants shall submit a proposed order of judgment consistent with this order. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 26, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

15